UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BRANDAN G. MANNS, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   CAUSE NO. 3:20-cv-01040-SLC |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, *sued as Kilolo Kijakazi,* | ) |
| *Acting Commissioner of Social Security,*[1] | ) |
| | ) |
|    Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Brandon G. Manns appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB"). (ECF 1). For the following reasons, the Commissioner's final decision will be reversed, and the case remanded to the Commissioner for further proceedings.

**I. FACTUAL AND PROCEDURAL HISTORY**

Manns applied for DIB in November 2018, alleging disability since March 27, 2018. (ECF 18 Administrative Record ("AR") 10, 166). Manns was last insured for DIB on December 31, 2019. (AR 12, 210). Thus, he must establish that he was disabled as of that date. *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that a claimant must establish that he was disabled as of his date last insured in order to recover DIB).

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, *see, e.g., Butler v. Kijakazi*, 4 F.4th 498 (7th Cir. 2021), and thus, she is automatically substituted for Andrew Saul in this case, *see* Fed. R. Civ. P. 25(d).

Manns's claim was denied initially and upon reconsideration. (AR 10, 66-81). On March 24, 2020, administrative law judge ("ALJ") Robert Long held an administrative hearing at which Manns, who was represented by counsel, and a vocational expert ("VE") testified. (AR 24-51). On April 20, 2020, the ALJ rendered an unfavorable decision to Manns, concluding that he was not disabled through his date last insured because he could perform a significant number of unskilled, light-exertional jobs in the national economy, including electronics worker, electrical assembler, and routing clerk, and bench assembler. (AR 10-19). The Appeals Council denied Manns's request for review (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner, 20 C.F.R. § 404.981.

Manns filed a complaint with this Court on December 18, 2020, seeking relief from the Commissioner's decision. (ECF 1). In his appeal, Manns alleges that: (1) the ALJ failed to properly assess his symptom testimony, (2) the ALJ failed to properly evaluate whether his impairments satisfied listing 1.04, disorders of the spine, and (3) the residual functional capacity ("RFC") assigned by the ALJ failed to account for all of his mental limitations. (ECF 22 at 5-24).

At the time of the ALJ's decision, Manns was twenty-nine years old (AR 166); had a tenth grade education (AR 180); and had past relevant work as a die cast machine operator (AR 17; *see* AR 180). When filing his DIB application, Manns alleged disability due to severe back pain, herniated discs, anxiety, attention deficit hyperactivity disorder (ADHD), and a major depressive disorder. (AR 179).

## II.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and

transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the [ALJ] applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant seeking DIB must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an

3

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether he has a severe impairment, (3) whether his impairment is one that the Commissioner considers conclusively disabling, (4) whether he is incapable of performing his past relevant work, and (5) whether he is incapable of performing any work in the national economy.[2] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The Commissioner's Final Decision

On April 20, 2020, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 10-19). The ALJ found at step one that Manns had not engaged in substantial gainful activity after his alleged onset date of March 27, 2018, through his date last insured of December 31, 2019. (AR 12). At step two, the ALJ determined that he had the

---

[2] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks he can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

4

following severe impairments through his date last insured: lumbar spine disorder, ADHD, borderline intellectual functioning, and major depressive disorder. (*Id.*). At step three, the ALJ concluded that through his date last insured Manns did not have an impairment or combination of impairments severe enough to meet or equal a listing. (*Id.*).

Before proceeding to step four, the ALJ determined that Manns's symptom testimony was "not fully consistent with the evidence of record," explaining that in reaching this finding he considered "various factors, including the objective medical evidence, medical treatment, medications taken, comments regarding the claimant's activities of daily living, work history and opinions." (AR 14-15). The ALJ then assigned Manns the following RFC:

> [T]hrough the date last insured, the claimant had the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except no more than occasionally climb ramps, stairs, ladders, ropes, and scaffolds; no more than occasionally balance, stoop, kneel, crouch & crawl; avoid concentrated exposure to hazards; able to understand remember and carry out simple instructions; the claimant is able to make judgments commensurate with the functions of simple repetitive tasks; the claimant is able to respond appropriately to brief supervision and interaction with coworkers; and the claimant is able to briefly interact with the public.

(AR 14).

Based on the assigned RFC and the VE's testimony, the ALJ found at step four that through his date last insured Manns was unable to perform his past relevant work. (AR 17). At step five, the ALJ found that through his date last insured Manns could perform a significant number of unskilled, light-exertional jobs in the economy, including electronics worker, electrical assembler, routing clerk, and bench assembler. (AR 18). Therefore, Manns's application for DIB was denied. (AR 19).

## C. Symptom Testimony

When assessing Manns's symptom testimony, the ALJ found that Manns's statements

5

about the intensity, persistence, and limiting effects of his symptoms were "not fully consistent with the evidence in the record." (AR 14). In doing so, the ALJ explained that he "[took] into consideration various factors, including the objective medical evidence, medical treatment, medications taken, comments regarding the claimant's activities of daily living, work history and opinions . . . . [and] also reviewed and considered Social Security Rulings as they relate to [Manns's] allegations of pain." (AR 14-15). Manns argues that the ALJ erred when assessing his symptom testimony by: (1) using boilerplate language and employing "backwards reasoning" to find support for the conclusion, (2) failing to properly evaluate his treatment history, (3) failing to fairly assess the objective medical evidence and articulate his logic related thereto, and (4) improperly assessing his wife's testimony. (ECF 22 at 9-18). For the following reasons, the ALJ's assessment of Manns's symptom testimony (and his subsequent assignment of the physical RFC) was materially flawed and will be remanded.

    a. Legal Standard

"In determining whether an individual is disabled, [the ALJ is to] consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). An ALJ's consideration of a claimant's symptom testimony is entitled to special deference because the ALJ is in the best position to evaluate the credibility of a witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and he articulates his analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988) (citation omitted), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v.*

6

*Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (citation omitted), his determination will be upheld unless it is "patently wrong," *Powers*, 207 F.3d at 435. *See Green v. Saul*, 781 F. App'x 522, 527 (7th Cir. 2019) (If an ALJ's judgment of a claimant's credibility "was tied to evidence in the record and was not patently wrong, we may not disturb it." (citation omitted)); *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's consideration of a claimant's symptom testimony because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness").

Having said that, an ALJ must base his credibility determination on "specific reasons supported by the record." *Richards v. Berryhill*, 743 F. App'x 26, 29 (7th Cir. 2018) (citation omitted). The regulations require the ALJ to analyze a variety of factors in making a determination of a claimant's subjective symptoms. These factors include: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medications; any additional treatments an individual receives for relief of symptoms; any non-treatment measures taken to relieve symptoms; and any other factors concerning an individual's functional limitations and restrictions due to symptoms. SSR 16-3p, 2017 WL 5180304, at *7-8.

    b. <u>Boilerplate Language</u>

Manns first argues that the ALJ relied on boilerplate language when concluding that his testimony was "not fully consistent" with the evidence of record. (ECF 22 at 11-12; *see* AR 14). Manns asserts that the ALJ's use of the phrase "not fully consistent" is meaningless boilerplate language long criticized by the Seventh Circuit Court of Appeals and district courts in this circuit. *See Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016) (criticizing the ALJ's use of "not

7

entirely credible" language, which "this court routinely has condemned as 'meaningless boilerplate' and 'backwards' analysis"); *Minger v. Berryhill*, 307 F. Supp. 3d 865, 871-72 (N.D. Ill. 2018) (stating that the "not entirely consistent" language was "yet another example of the continuous, confusing and meaningless boilerplate that is all too common in these decisions and that stubbornly persists in spite of the efforts of the Court of Appeals"); *see also Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010); *John P. v. Saul*, No. 2:19cv0004, 2019 WL 4072118, at *11 (N.D. Ind. Aug. 28, 2019); *Justin H. v. Berryhill*, No. 2:18cv383, 2019 WL 2417423, at *12-13 (N.D. Ind. June 7, 2019); *Murphy v. Berryhill*, No. 1:18cv118, 2019 WL 1123511, at *15 (N.D. Ind. Mar. 11, 2019); *Farley v. Berryhill*, 314 F. Supp. 3d 941, 946 (N.D. Ill. 2018).

Nevertheless, "[u]se of boilerplate is not automatically ground for remand . . . ." *Stark*, 813 F.3d at 688 (citing *Murphy v. Colvin*, 759 F.3d 811, 816 (5th Cir. 2014)). Despite an ALJ's use of boilerplate language, "an ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong." *Blackwell v. Berryhill*, No. 2:17-cv-00460-JVB-APR, 2019 WL 1397476, at *5 (N.D. Ind. Mar. 27, 2019) (citations omitted); *see also Joyce W. v. Berryhill*, No. 2:18-cv-104-JVB-JEM, 2019 WL 2353500, at *5 (N.D. Ind. June 3, 2019); *Torres v. Berryhill*, No. 2:17-cv-393, 2019 WL 2265367, at *6 (N.D. Ind. May 28, 2019). Thus, "the [boilerplate] formulation does not require a remand if the ALJ identified legitimate reasons for discrediting the claimant's testimony." *Lafayette v. Berryhill*, 743 F. App'x 697, 699 (7th Cir. 2018).

Reading the ALJ's decision as a whole and with common sense as the Court is required to do, *see Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010) ("[T]idy packaging" is not required in ALJs' decisions because the courts read them "as a whole and with common sense." (citations omitted)), the ALJ identified several reasons for his conclusion about

8

Manns's symptom testimony: (1) Manns has sought only "sporadic" and "conservative" treatment for his back pain complaints, involving just medication management without other treatment (AR 15-16); (2) aside from a sporadic report of antalgic gait and slight reduction in right leg strength, the record lacks objective findings on clinical examinations, "such as loss of motor strength, sensory, ambulatory ability, or manipulative ability" (AR 15); (3) treatment for his mental conditions has been minimal and conservative (AR 15-16); (4) the medical source opinions (with the exception of Judlith Dygdon, Ph.D., which the ALJ found unpersuasive) do not support greater limitations than assigned in the RFC (AR 16-17); and (5) Manns was able to perform an array of self care and activities of daily living without assistance (AR 13).[3] As such, Mann's challenge to the ALJ's determination about his symptom testimony rests on the legitimacy of these reasons.

   c. Treatment History

First, Manns argues that the ALJ unfairly characterized his treatment for his back pain as "sporadic" and "conservative" by noting that he was not a surgical candidate and by ignoring that he was prescribed strong pain medications. (ECF 22 at 12-14; *see* AR 15-16). Manns also contends that the ALJ erred by discounting his symptom testimony on this basis without first inquiring why he did not seek additional, more invasive care. (ECF 22 at 14-17; *see* AR 15).

Pursuant to SSR 16-3p, an ALJ is to consider the treatment that a claimant has received for his impairment. 2017 WL 5180304, at *8. During the hearing, the ALJ inquired about Manns's use of medications (AR 33; *see also* AR 43-44), and then noted in the decision that

---

[3] Manns does not meaningfully challenge the ALJ's consideration of his activities of daily living in connection with his symptom testimony. (*See* ECF 22 at 12-18).

9

Manns relied on medication management for his symptoms and that he had not undergone any invasive surgical procedures (AR 15).  The ALJ, however, did not discuss the strength or type of medications that Manns used.  Nor did the ALJ mention that Manns also underwent physical therapy and several spinal injections for pain reduction.  (*See, e.g.*, AR 245, 348, 361, 461, 471).

Use of prescription medication is "well within the range of treatment deemed conservative by the Seventh Circuit [Court of Appeals] in past cases."  *Sherry v. Colvin*, No. 13 C 4825, 2016 WL 305358, at *8 (N.D. Ill. Jan. 26, 2016) (citations omitted); *see Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (affirming adverse credibility finding based on "relatively conservative" treatment consisting of "various pain medications, several injections, and one physical therapy session"); *Mcclure v. Colvin*, No. 1:12-cv-571-TAB-RLY, 2013 WL 4509848, at *5 (S.D. Ind. Aug. 23, 2013) ("McClure's lack of surgery is relevant where it correlates to his otherwise conservative treatment . . . ."); *Stanley v. Astrue*, No. 1:11-cv-00298, 2012 WL 1158630, at *10 (N.D. Ind. Apr. 6, 2012) (affirming relevance of the ALJ's consideration of the claimant's relatively conservative treatment for back pain when assessing symptom testimony).  Even receiving a few spinal injections and participating in physical therapy does not change that.  *See, e.g.*, *Simila*, 573 F.3d at 519.

On the other hand, the Seventh Circuit has also opined that "a claimant's election to undergo serious treatment, such has having surgery *and taking 'heavy doses of strong drugs*,'  indicates that the claimant's complaints of pain are likely credible."  *Scrogham v. Colvin*, 765 F.3d 685, 701 (7th Cir. 2014) (emphasis added) (citing *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004)).  While Manns did not undergo surgery or implantation of a spinal-cord stimulator as in *Scrogham* or *Carradine*, the record does reveal that his "opioid requirements far

10

exceed[] the CDC recommendations." (*See, e.g.*, AR 366, 457, 471, 475). Thus, Manns's taking of strong drugs arguably lends some support to his complaints of severe pain. *See Scrogham*, 765 F.3d at 701 ("Instead of showing that Mr. Scrogham's limitations were not as severe as he alleged, evidence that he was willing to . . . take powerful pain medication—and that physicians were willing to prescribe this course of treatment—reflects that Mr. Scrogham's symptoms caused him real problems."). Nevertheless, while the ALJ's consideration of Manns's past treatment could have been more thorough, it is not "patently wrong," *Powers*, 207 F.3d at 435, and standing alone it does not warrant a remand.

Manns also argues that the ALJ erred by discounting his symptom testimony on the ground that he did not seek out more-invasive care, without first asking him why he did not seek out such additional care. (ECF 22 at 14). Manns notes that "the decision contains no discussion of whether [he] could afford treatment, whether he had insurance, whether other treatment was recommended, and/or whether he had the intellectual and emotional ability to manage his treatment." (*Id.* at 15). As Manns sees it, "the ALJ had the duty to ask before making assum[p]tions and using those assumptions to deny [him] benefits." (*Id.*).

"[C]ontrary to [Mann's] argument, [SSR] 16-3p did not require the ALJ to ask him about [his] failure to seek [more than conservative] treatment. That rule provides that an ALJ must *consider* possible reasons for a failure to seek treatment." *Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021) (emphasis added). Manns does not cite to any reason in the record why he did not seek additional treatment for his back pain. Rather, in hindsight he suggests he "may have struggled to understand at times," "lacked insight," and that his anxiety "may have influenced his decision about how often he went to doctors' offices and sat in crowded waiting

11

rooms." (ECF 22 at 15).

But even Manns acknowledges that such proffered reasons are merely "speculative" at this juncture. (*Id.*). As the ALJ observed, "there is little to no objective evidence that [Manns] is unable to interact with others appropriately (the claimant[] is never documented as anything but cooperative and pleasant) . . . ." (AR 16). And while Manns testified that it "bothers" him to be around crowds of people while shopping or at a doctor's office, he was still able to accomplish these tasks. (AR 34-35; *see also* AR 13 ("The claimant is documented as . . . able to shop in stores and spend time with others." (citation omitted)). Therefore, it is not reasonable to infer that Manns's anxiety around crowds prevented him from seeking out additional treatment for his back problems. *See generally Stevenson v. Chater*, 105 F.3d 1151, 1155 (7th Cir. 1997) (acknowledging that an ALJ is entitled to make *reasonable* inferences from the evidence before him). Consequently, on the record presented, the ALJ did not run afoul of SSR 16-3p by failing to inquire why Manns did not seek out more than conservative treatment for his back symptoms.

    d.  <u>Objective Medical Evidence and Medical Source Opinions</u>

Manns also argues that the ALJ failed to adequately explain why the objective medical findings of record did not support his testimony of disabling symptoms. (ECF 22 at 15-17). That is, Manns contends that the ALJ failed to build an accurate and logical bridge from the objective medical evidence and his conclusion that the severity of Manns's symptom testimony was not fully believable. More specifically, Manns argues that the ALJ noted evidence of positive straight leg raising tests, reduced range of motion, antalgic gait, positive imaging reports, and reduced motor strength, but then improperly juxtaposed them against other evidence of "so-called normal findings" without explaining why the purported "normal" findings were

12

more probative than the findings consistent with Manns's complaints. (*Id.*).

When considering the objective medical evidence, the ALJ considered that imaging revealed "degenerative changes, stenosis, and spondylosis, with diagnostic testing reporting lumbar radiculopathy." (AR 15 (citing AR 342-44, 379-80)). The ALJ further wrote that Manns had sporadic reports of an antalgic gait and a slight reduction in right leg motor strength, but that the "records fail to document ongoing focal or neurological deficit, such as loss of motor strength, sensory, ambulatory ability or manipulative ability." (AR 15 (citations omitted)). The ALJ also stated:

> The claimant underwent a State agency requested consultative medical examination in March 2019, the results of which fail to support greater limitations than those assessed herein. For example, other than a tender lumbar spine that displayed some decreased range of motion, and a positive straight leg raise exam, the claimant was without acute [distress], he was normal as to his gait, he displayed ability to conduct requested orthopedic maneuvers (on/off the examination table and squatting), he retained a normal range of motion to his neck, normal pulses a normal range of motion to his upper and lower extremities, he was without muscle spasms to his lumbar spine, he retained full (5/5) motor strength and sensory throughout, he was intact as to cranial nerves and reflexes, he retained an intact (5/5) grip strength, and he displayed use as to fine manipulative ability (able to pick up coins). While the claimant's lumbar spine symptoms have been considered herein, the lack of focal or neurological deficit, and the overwhelming normalcy of said examination, fails to support necessity of greater limitations than those assessed herein.

(AR 19 (citing AR 461-62)).

The ALJ's observations about Manns's strength, gait, and sensation, however, are not necessarily inconsistent with disabling chronic pain. "[A]s several courts in this circuit have acknowledged, even full muscle strength is consistent with impairments that cause pain and thereby affect a claimant's functional limitations . . . ." *Otis S. v. Saul*, No. 1:18-CV-372-WCL-JPK, 2019 WL 7669923, at *3 (N.D. Ind. Dec. 19, 2019); *see also id.* at *3 n.4 (collecting cases);

13

*Fansler v. Astrue*, No. 1:07-CV-00081, 2008 WL 474205, at *7 (N.D. Ind. Feb. 19, 2008) ("[I]t appears that the ALJ succumbed to the temptation to 'play doctor' when he independently concluded that normal muscle strength is inconsistent with chronic pain."). ALJs should "rely on expert opinions instead of determining the significance of particular medical findings themselves." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014).

In assessing Manns's symptoms, the ALJ indicated that he relied on the assessments of the state agency doctors who reviewed Manns's record in March and May 2019, including the consultative medical examination from March 2019 and the imaging results. (AR 16 (citing AR 60-61, 74-76)). These doctors concluded that Manns could stand or walk six hours in an eight-hour workday; sit for six hours in a workday; lift ten pounds frequently and twenty pounds occasionally; climb, balance, stoop, kneel, and crouch occasionally;[4] *and must periodically alternate sitting and standing to relieve pain and discomfort*. (AR 60, 75). The ALJ found these state agency physicians' opinions "persuasive" and explained that he assigned a "similar" RFC. (AR 16). However, without explanation, the ALJ omitted from both the RFC and the hypotheticals to the VE the restriction assigned by the state agency doctors of needing to alternate between sitting and standing throughout the workday to relieve pain and discomfort. (*See* AR 14, 48-50). This limitation may well have "stemmed from [Manns's] chronic pain, rather than from a lack of strength, range of motion, or sensation in [his] lower extremities." *Arnett v. Saul*, No. 4:20-cv-00046-SLC, 2021 WL 2394338, at *4 (N.D. Ind. June 11, 2021). As such, contrary to the ALJ's assertion (AR 17), the ALJ's assessment of Manns's symptom

---

[4] The March 2019 opinion stated that Manns could perform these postural movements "frequently" rather than "occasionally." (AR 60).

14

testimony and the assigned RFC are *not* supported by the medical opinions of record, because the ALJ was "patently wrong" about the content of the limitations assigned by these state agency doctors. *Powers*, 207 F.3d at 435.

The ALJ's oversight with respect to his consideration of the opinions of the state agency doctors is material, as the ALJ relied on these opinions when assessing the severity of Manns's symptom testimony and when assigning the physical RFC. (*See* AR 16); *see* 20 C.F.R. § 404.1513a(b)(i) (deeming state agency physicians "highly qualified and experts in Social Security disability evaluation"). Further, there is no other medical source opinion of record indicating that Manns could perform light-exertional (or sedentary) work without the need to alternate between sitting and standing throughout the workday to relieve pain and discomfort. Likewise, there is no testimony by the VE that the representative jobs he identified could still be performed with the additional limitation of a sit-to-stand option. (*See* AR 46-50). As such, the physical RFC assigned by the ALJ lacks the support of substantial evidence.

In sum, because the ALJ's error in assessing the opinions of the state agency doctors could have materially impacted the ALJ's analysis of Manns's physical symptom testimony, the physical RFC, and the ALJ's step-five conclusion, the Commissioner's final decision will be remanded.[5]

---

[5] Because a remand is necessary for the ALJ to reconsider Manns's physical symptom testimony, physical RFC, and the ALJ's step-five conclusion, the Court need not reach Manns's other arguments pertaining to his mental symptom testimony and the mental RFC, or the testimony of his wife.
   Having said that, the ALJ upon remand should remedy his incorrect reference to the testimony of Manns's wife as an "opinion." (AR 17). Manns's wife never claimed to be an "acceptable medical source," and thus, the ALJ's discounting of her testimony on this basis is misplaced. Further, automatically discounting the testimony of a family member on the basis of the familial relationship, as the ALJ appeared to do here, is improper. *See Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013). Instead, "[t]he [ALJ] should have made clear whether he believed the [wife's] testimony or not, or which part he believed, or whether he had no idea how much of what she said was worthy of belief." *Id.*

15

*D. Listing 1.04*

Manns also argues that the ALJ erred at step three by failing to mention—much less analyze—whether he met or equaled listing 1.04, disorders of the spine. (ECF 22 at 7-8). "Under a theory of presumptive disability, a claimant is eligible for benefits if [he] has an impairment that meets or equals an impairment found in the Listing of Impairments." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing 20 C.F.R. § 404.1520(d); 20 C.F.R Part 404, Subpart P, App'x 1)). "The listings specify the criteria for impairments that are considered presumptively disabling." *Id*. (citing 20 C.F.R. § 404.1525(a)). To meet or equal a listed impairment, a claimant must satisfy *all* of the criteria of the listed impairment. *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006); *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). The claimant bears the burden of proving his condition meets or equals a listed impairment. *Ribaudo*, 458 F.3d at 583; *Maggard*, 167 F.3d at 380. Having said that, "an ALJ should mention the specific listings he is considering and his failure to do so, if combined with a 'perfunctory analysis,' may require a remand." *Ribaudo*, 458 F.3d at 583-84 (citing *Barnett*, 381 F.3d at 668; *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003)); *see also Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

At step three, after finding Mann's lumbar spine impairment to be "severe" at step two, the ALJ only discussed mental health listings 12.02, 12.04, and 12.11, never mentioning the spinal disorders listing 1.04. (AR 12-13). In that regard, the ALJ broadly stated:

> A thorough review of the objective medical evidence . . . leads the undersigned to conclude that the aforementioned 'severe' impairments are not severe enough to meet or medically equal of the [listings]. In addition, no examining or non-examining physician has noted that the claimant's impairments equal any of the listed impairments. This finding is consistent with the persuasive State agency consultant opinions.

(AR 12). "This type of analysis is the very type of perfunctory analysis the Seventh Circuit [Court of Appeals] has repeatedly found inadequate to dismiss an impairment as not meeting or equaling a listing." *Jonie G. v. Saul*, No. 18 CV 50100, 2019 WL 6716610, at *3 (N.D. Ill. Dec. 10, 2019) (citation and internal quotation marks omitted) (characterizing the ALJ's step-three analysis as perfunctory where the ALJ merely recited the criteria of each listing and stated that the plaintiff's impairments failed to meet each criteria of the listing); *see also Minnick v. Colvin*, 775 F.3d 929, 935-36 (7th Cir. 2015).

Given that the record is replete with evidence that Mann suffers from lumbar radiculopathy (*see, e.g.*, AR 57, 329, 333, 338, 344, 348-49, 362, 367, 408, 473, 477), which is arguably relevant to listing 1.04A,[6] *see Wyatt v. Colvin*, No. 13CV1972-WQH-NLS, 2014 WL 3501974, at *3 n.4 (S.D. Cal. July 14, 2014) ("Lumbar radiculopathy is the compression or inflammation of the spinal nerve root that may cause pain, numbness, or weakness." (citation omitted)); *Pereira v. Astrue*, 279 F.R.D. 201, 203 n.4 (E.D.N.Y. 2010) ("Lumbar Radiculopathy is a compression and irritation of nerve roots in the lumbar region, with resultant pain in the lower back and lower limbs." (citation omitted)), the ALJ should have discussed listing 1.04 in

---

[6] The criteria of listing 1.04A during the relevant period was:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Part 404, Subpart P, App'x 1, § 1.04. Listing 1.04A has since been incorporated into Listing 1.15. *See, e.g.*, *McPherson v. Kijakazi*, No. 1:20CV710, 2021 WL 5889988, at *5 n.6 (M.D.N.C. Dec. 13, 2021) (R. & R.) (citing Rescission of Acquiescence Ruling 15-1(4), 85 FR 79063, 2020 WL 7209986 (Dec. 8, 2020)).

more than a perfunctory manner.  Further, there are notes of record revealing at least some lower extremity strength deficits, reduced lumbar range of motion, loss of reflexes, antalgic gait, and positive straight-leg-raise tests, which are all relevant to the criteria of listing 1.04A.  (*See, e.g.*, AR 57, 61, 72, 76, 333, 338, 373, 418, 462, 464, 471-72, 475); *see Richards v. Saul*, No. 1:19-cv-153-PPS, 2020 WL 2190636, at *2 (N.D. Ind. May 6, 2020) ("Treatment notes show that [the claimant] had limited range of motion in his lumbar spine and lower extremities; motor loss indicated by extremity weakness and atrophy; and absent and diminished reflexes in the lower extremities.  All of these findings could support the elements of Listing 1.04(A) and therefore require a more in depth analysis at step three." (citations omitted)).

Granted there are other records showing at times normal lower extremity strength, gait, range of motion, sensation, and reflexes.  (*See, e.g.*, AR 57, 61, 72, 76, 355, 357, 361, 407, 462, 477).  And while the record contains positive straight-leg-raise tests (*see, e.g.*, AR 333, 338), there is no indication that they were positive in both sitting and supine as required by listing 1.04A.  Consequently, though Manns asks the Court to reverse the Commissioner's decision and remand for an outright award of benefits based on a finding that he met listing 1.04A (ECF 22 at 8, 25), the Court declines to do so.  "An award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability."  *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005) (citations omitted); *see also Bray v. Astrue*, No. 2:10-CV-00352, 2011 WL 3608573, at *10 (N.D. Ind. Aug. 15, 2011).  Here, the record does not "yield but one supportable conclusion" in Manns's favor based on listing 1.04A.  *Briscoe ex rel. Taylor*, 425 F.3d at 355.  Therefore, on remand, the ALJ should properly consider all of the criteria of listing 1.04 (or its revised equivalent) and the evidence relevant thereto, and

adequately articulate his analysis of such listing so that his path of reasoning can be easily traced.  *See Clifford*, 227 F.3d at 872 ("[W]e must be able to trace the ALJ's path of reasoning.").

## IV.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order.  The clerk is directed to enter a judgment in favor of Manns and against the Commissioner.

SO ORDERED.

Entered this 30th day of March 2022.

/s/ Susan Collins  
Susan Collins  
United States Magistrate Judge